**UNITED STATES of America, Appellee,**

v.

**Thomas William SULLIVAN, Appellant.**

**No. 75–3327.**

United States Court of Appeals,
Ninth Circuit.

Nov. 3, 1976.

Nicholas R. Allis, Deputy Federal Public Defender (argued), Los Angeles, Cal., for appellant.

Deanne H. Smith, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and VAN PELT,* Senior District Judge.

ELY, Circuit Judge:

Sullivan was convicted in a jury trial of having presented false identification in con-

---

* Honorable Robert Van Pelt, Senior District Judge for the District of Nebraska, sitting by designation.

nection with several purchases of firearms [18 U.S.C. § 922(a)(6) (Supp.1976).] He defended his conduct on the ground that he was not legally sane at the time of the purchases. On appeal he contends that the trial court erred in refusing to adopt one of two jury instructions proposed by the defense, either of which would have clarified the concept of "wrongfulness" as it pertains to the insanity defense. *See Wade v. United States,* 426 F.2d 64 (9th Cir. 1970) (en banc); *United States v. McGraw,* 515 F.2d 758 (9th Cir. 1975). We agree with the appellant for the reasons stated below and therefore reverse and remand.

### BACKGROUND

During the course of the trial, expert witnesses for both the prosecution and the defense confirmed that Sullivan suffered from manic-depressive psychosis, a mental illness apparently characterized in some instances by a condition of extreme egocentricity, and manifested by displays of grandiosity. The defense submitted that Sullivan's illness reflected itself in his assumption of a role as a retired, high-ranking military officer and his insistence on having a gun collection, thereby leading to the offenses for which he was charged.

Although conceding Sullivan's mental illness, psychiatrists for the prosecution concluded that he was not "delusional" and did not lack substantial capacity, by virtue of his illness, either to appreciate the wrongfulness of his conduct or to conform his conduct to legal requirements. Dr. Meyers, the sole expert witness testifying for the defense, agreed that Sullivan was not "delusional," at least "in the same sense as the schizophrenic," but nonetheless concluded that he lacked substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of law.

When expressing his expert opinion, Dr. Meyers at one point evinced confusion with respect to the proper legal connotation of "wrongfulness":

"The Court: . . . [D]o you have an opinion . . . whether the de-

fendant did or did not lack substantial capacity to appreciate the wrongfulness of his conduct?

"The Witness: May I ask a question, Your Honor?

"The Court: Yes, sir.

"The Witness: In this respect, this refers only to intellectual, or does it refer also to moral capacity?

"The Court: Well, that is the test the law applies, Doctor, and you have to take an understanding as you find it of that language. . . .

"The Court [sic]: Intellectually, I think he understood, morally, I do not think he did.

\* \* \* \* \* \*

[cross-examination]

"The Court: Well, to put it another way, Doctor, would you say that his view was that although he knew and recognized that there was a law which said you couldn't do certain things and did have to do certain other things, that it was his view that the law did not apply to him?

"The Witness: In his way of thinking, yes, in a way that's true.

[the prosecutor]

"By Miss Smith:

Q. Dr. Meyers, is that the basis then of your opinion that he lacks substantial capacity to appreciate the wrongfulness of his conduct?

A. Yes."

Thus, Dr. Meyers' testimony obviously confronted the jury with conflicting concepts of "wrongfulness," one encompassing the intellectual ability to appreciate criminality, and the other contemplating capacity to appreciate moral wrongfulness. This conflict was aggravated by a portion of the prosecutor's closing argument:

"You also heard as to the appreciation of wrongfulness aspect, the testimony of Doctor Meyers. You heard Doctor Meyers say, Yes, in his opinion, he felt the defendant did lack substantial capacity to appreciate the wrongfulness of his conduct. But recall later on in his testimony he stated that it was his opinion that the

defendant did not lack, he did have substantial capacity to appreciate the criminality of his act. He thought that the defendant lacked the substantial capacity to appreciate the moral wrongfulness of his conduct, and remember, he stated, because of the fact that the defendant felt he was above the law."

In response, defense counsel exhorted:

"I submit Ladies and Gentlemen, that in considering the test, was he as a result of mental disease or defect substantially unable to appreciate the wrongfulness of his conduct? that he may have understood that his act was criminal but he did not substantially appreciate that his act was immoral."

When the prosecutor objected to this statement, the court replied:

"Well, I think the jury has come to the view already and certainly they should have that the law is going to come from this side of the bench. And that's the law you are going to have to apply. You may proceed."

Thus, the prosecutor's objection was not sustained, and whether the judge intended to do so or not, he implied to the jury that he would instruct them as to the legal definition of "wrongfulness" pertinent to evaluating Dr. Meyers' opinion and, ultimately, the culpability of the defendant. Moreover, the court's comments are subject to the interpretation that it was then intended that the jury would be instructed in line with the argument of the defense.

Subsequently, however, the court rejected two jury instructions tendered in the alternative by the defense designed to clarify the concept of "wrongfulness." The proposals, respectively, read as follows:

(1) For purposes of the insanity defense, wrongfulness means moral wrongful-

ness rather than criminal wrongfulness.

(2) You are instructed that the defendant lacked substantial capacity to appreciate the wrongfulness of his conduct, even if he knows his act to be criminal, but commits it because of a delusion that it was morally justified.

Essentially, both proposals quote statements made by this Court in *Wade v. United States, supra*, 426 F.2d at 71–72 and in *McGraw v. United States, supra*, 515 F.2d at 759–60. The trial court refused to issue either of the above instructions on grounds that there was no evidence presented upon which to submit the factual issue to the jury that the defendant had suffered from a *delusion* that his activities were morally justified.

## ANALYSIS

◼ In *Wade v. United States, supra*, we held that, for purposes of the insanity defense, "wrongfulness" means moral wrongfulness rather than criminal wrongfulness. As we interpreted this rule in *United States v. McGraw, supra*, "a defendant lacks substantial capacity to appreciate the wrongfulness of his conduct if he knows his act to be criminal but commits it because of a *delusion* that it is morally justified." 515 F.2d at 760 (emphasis supplied). Apparently, the court mistook our use of the word "delusion" as an attempt to restrict the types of mental illnesses which will support the issuance of a clarifying instruction as to the *Wade* definition of "wrongfulness." We seize this opportunity to disclaim any talismanic focus on the word "delusion." The word adds no additional element to those which must be established before an individual is entitled to any instruction on legal insanity; it is a word of clarification, not of limitation.[1]

---

1. The word "delusion" in *McGraw* comes from our opinion in *Wade, supra*, 426 F.2d at 71, which borrows the term from *United States v. Freeman*, 357 F.2d 606, 622 n.52 (2d Cir. 1966). *Freeman*, in turn, cites the landmark opinion of Judge Cardozo in *People v. Schmidt*, 216 N.Y. 324, 110 N.E. 945 (1916). A reading of *Schmidt*, which is a fountainhead case holding that "wrongfulness" means moral rather than criminal wrongfulness, reveals that Judge Cardozo employed "delusion" simply to denote a misperception engendered by mental disease or defect (*see id.* at 340, 110 N.E. at 949–50), a definition to which we subscribe in this case. We note that of the five Circuits which now have adopted the position that "wrongfulness" means moral wrongfulness, none has ascribed to the term "delusion" any restrictive, psychi-

The prosecution urges that we construe "delusion" as a psychiatrist might define the term, *i. e.*, in terms of bizarre thought content associated with severe forms of mental illness;[2] otherwise, so it is argued, the insanity defense will be available to those who commit criminal offenses because they simply "believe" their acts to be morally justified. We most assuredly agree that one who acts pursuant to a mistaken belief that he is morally justified, without more, does not legally lack substantial capacity to appreciate the moral wrongfulness of his act; he simply chooses not to do so. But someone who commits a criminal act under a false belief, *the result of mental disease or defect*, that such act is morally justified, does indeed lack substantial capacity to appreciate the wrongfulness of his conduct, irrespective of whether he can be correctly diagnosed, medically, as "delusional." The *Wade* test for legal insanity requires no more. There are doubtless many mental diseases or defects that can be even more severe than a condition described as "delusional."

Consequently, the Government stands in the position of conceding Sullivan's mental illness and his right to have the jury instructed on the test for insanity, yet contesting his right to an instruction clarifying the proper meaning of "wrongfulness," an operative word of that test in respect to which the jury had been exposed to confusing, if not diametrically opposing views. We held in *McGraw* that the trial court suffers the responsibility in this situation to instruct the jury that "wrongfulness" means moral wrongfulness rather than criminal wrongfulness. 515 F.2d at 760. Accordingly, we conclude that the court erred by refusing to accept one of the aforementioned instructions submitted by the defense, particularly in light of the jury's probable expectation that a clarifying instruction would be forthcoming. We note in passing that either instruction would have been suitable in the present case, inasmuch as both accurately reiterate statements made by us in *Wade* and *McGraw*.

REVERSED and REMANDED.

atric meaning. In fact, the majority of Circuits have not utilized the term at all. *United States v. Freeman, supra*, (using the term "delusion" and citing to *People v. Schmidt, supra* ); *Blake v. United States*, 407 F.2d 908, 915–16 (5th Cir. 1969) (en banc) (citing the footnote in *Freeman* and repeating the language). Not using the term are *United States v. Brawner*, 153 U.S. App.D.C. 1, 471 F.2d 969, 991–92 (1972); *United States v. Frazier*, 458 F.2d 911, 918 (8th Cir. 1972); and *United States v. Shapiro*, 383 F.2d 680, 686 (7th Cir. 1967) (en banc).

2. On cross-examination, Dr. Pollack, the chief expert for the prosecution, stated that people who are considered to have delusional ideas by the layman are not necessarily considered to be delusional by the psychiatrist or the psychologist. That "delusion" is a psychiatric word of art is amply illustrated in a book written by Dr. Pollack in which he devotes nearly 30 pages to discussion of the term. Seymour Pollack, Forensic Psychiatry in Criminal Law 71–100 (University of Southern California 1974).