**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David Lee FRESONKE a/k/a David Lee Johnson, Defendant-Appellant.**

**No. 76–2467.**

United States Court of Appeals, Ninth Circuit.

Jan. 17, 1977.

Rehearing and Rehearing En Banc Denied April 15, 1977.

---

Harry J. McCarthy, Asst. U. S. Atty., Seattle, Wash., argued, for plaintiff-appellee.

William J. Bender, Asst. Federal Public Defender, Seattle, Wash., argued, for defendant-appellant.

Before BROWNING and TRASK, Circuit Judges, and WILLIAMS,* District Judge.

## OPINION

DAVID W. WILLIAMS, District Judge.

Fresonke appeals from his conviction by a jury on four counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). Since it was stipulated that appellant was the individual who robbed each of the four banks in question, the entire trial revolved around his state of mind with regard to the acts charged. In light of our decisions in *United States v. McGraw,* 515 F.2d 758 (9th Cir. 1975) and *United States v. Sullivan,* 544 F.2d 1052 (9th Cir. 1976), we must conclude that the district court improperly refused to instruct the jury on the controlling definition of "wrongfulness" as it pertains to the insanity defense. We therefore reverse and remand.

## BACKGROUND

At the trial the defense called Dr. Ralph Hirschstein, a clinical psychologist whom the court deemed qualified as an expert witness. Based on two examinations of the appellant lasting approximately four hours, interviews with appellant's mother, grandmother, and fiancee, and reviews of jail and prison records, the reports of a pharmacologist, army records, reports of a psychiatrist who examined the defendant at the request of the government, and the results of psychological tests administered himself, Dr. Hirschstein concluded that appellant was mentally ill in that he was "intermittently psychotic." Specifically, Dr. Hirschstein was of the opinion that appellant was driven by this mental illness to perform the bank robberies; he lacked substantial capacity to conform his conduct to the requirements of the law; and during the perpetration of the crimes he lacked substantial capacity to appreciate the *moral* wrongfulness of his conduct.

The government called one expert witness, Dr. S. Harvard Kaufman, a psychiatrist. Dr. Kaufman predicated his diagnosis on one examination of the appellant at the county jail and a review of a summary of his alleged criminal activity, the jail medical report, Dr. Hirschstein's report, and the reports of another psychologist and psy-

---

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

chiatrist. Although granting that the appellant had a severe character disorder of a psychopathic nature and anti-social characteristics, Dr. Kaufman concluded on direct examination that to a reasonable medical certainty the defendant had a good appreciation of the wrongfulness of his conduct at the time of the robberies, and that he was capable of conforming his conduct to the requirements of law. The prosecution did not ask Dr. Kaufman, however, to make the critical elaboration of offering an opinion as to the appellant's ability to appreciate the *moral* wrongfulness of his conduct at the time of the robberies.

On cross-examination, counsel for appellant elicited from Dr. Kaufman the following statements directed at distinguishing moral wrongfulness:

Q. (Counsel for Appellant)

Now, I think you have described this person in speaking with Mr. Gray and to the Court and jury as a sociopath, or psychopath as it is more contemporarily called, is that correct?

A. (Dr. Kaufman)

That's correct.

Q. Is that a term which has been used in your profession for some time, is that a diagnostic term?

A. Yes. It changes depending on the style of psychiatric diagnosis. It used to be called by the English I think moral retardation or moral deficiency, and then it became psychopathic personality, and it then became character disorder, and then it became sociopathic personality. It's the same thing.

Q. By moral retardation or deficiency we are really talking about people who cannot appreciate the moral wrongfulness of their conduct, correct?

A. They cannot appreciate some of the usual values in life.

Q. All right, but I want to pin you down a little bit. By usual values, relying on the history of this definition, we mean those moral values which the society at large takes to be dear, important?

A. Correct.

Q. In other words, a psychopath is the person who cannot appreciate the morality of his conduct?

A. That's correct.

Q. The moral wrongfulness of his acts, correct?

A. But he knows that they are wrong.

Q. He may know that they are wrong but he can't appreciate that special moral quality which makes up the mainstream of social living, correct?

A. I don't care what appreciate means. He doesn't care, I'll tell you that.

Q. Well, in your profession you are used to—let me strike that. The moral fibre of the mainstream of society is not operative in the psychopath when the psychopath commits a criminal act, correct?

A. Correct.

The defense objected to the court's proposed instruction on the issue of insanity since it failed to define the concept of "wrongfulness," as purportedly required by *United States v. McGraw, supra.* The government argued and the court agreed that to justify an instruction defining wrongfulness as set forth in *McGraw*, there must be evidence that the inability to appreciate wrongfulness was "a result of a moral delusion, that is someone who believes he hears voices from on high commanding him to [act in the manner charged]." The trial judge declared that according to *McGraw* he could not give an instruction defining wrongfulness unless the appellant had testified, which he had not, that despite the fact that he knew his actions were legally wrong, he felt they were morally right.

## ANALYSIS

In *Wade v. United States,* 426 F.2d 64 (9th Cir. 1970) (en banc), we held that, for purposes of the insanity defense, "wrongfulness" means moral wrongfulness rather than criminal wrongfulness. In *United States v. McGraw, supra,* we interpreted the *Wade* rule to mean that "a defendant lacks substantial capacity to appreciate the wrongfulness of his conduct if he knows his

1256

act to be criminal but commits it because of a *delusion* that it is morally justified." 515 F.2d at 760 (emphasis supplied). However, in *United States v. Sullivan, supra,* this Court explained the aforementioned directive of *McGraw.* Concluding that the district court mistook our use of the word "delusion" as an attempt to restrict the types of mental illnesses which will support the issuance of a clarifying instruction as to the *Wade* definition of "wrongfulness," we declared that "(t)he word adds no additional element to those which must be established before an individual is entitled to any instruction on legal insanity; it is a word of clarification, not of limitation." 544 F.2d at 1055.

As in *Sullivan,* the lower court relied on a critical misinterpretation of *McGraw* in refusing to issue a clarifying instruction on "wrongfulness" on grounds that there was no evidence presented upon which to submit the factual issue to the jury that the appellant had suffered from a *delusion* that his activities were morally justified. And as in *Sullivan,* the jury here had been exposed to confusing, if not conflicting concepts of "wrongfulness." Stated simply, the expert witnesses' testimony may have caused the jurors confusion. An instruction that for purposes of the insanity defense, wrongfulness means moral wrongfulness rather than criminal wrongfulness, would have helped to clear up such confusion. The appellant is entitled to the benefit of the clarifying instruction on such a pivotal concept as wrongfulness and its implications on an insanity defense.

REVERSED AND REMANDED.