**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank Markoe SIBLEY,**
**Defendant-Appellant.**

**No. 78-1465.**

United States Court of Appeals,
Ninth Circuit.

April 27, 1979.

James L. Vonasch, Seattle, Wash., for defendant-appellant.

Chris McKenna, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT and ANDERSON, Circuit Judges, and TAKASUGI,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

## I. PROCEEDINGS BELOW

Sibley hijacked a United Airlines airplane at Reno, Nevada, on August 18, 1972. After flying to Vancouver, British Columbia, the aircraft was flown to Seattle, Washington, where Sibley was shot and apprehended. Sibley was charged with air piracy (49 U.S.C. § 1472(i)) and was convicted by a jury of the charge on October 18, 1972. After sentencing, Sibley appealed his conviction and instituted another action seeking relief under 28 U.S.C. § 2255. On

January 7, 1977, this court in a memorandum decision reversed Sibley's conviction, finding that there was substantial evidence that the defendant may have been "mentally incompetent to stand trial" and that the trial court "should have conducted an evidentiary hearing." *United States v. Sibley*, 549 F.2d 810 (unpublished memorandum, 9th Cir., 1977). Sibley's appeal from the denial of § 2255 relief was dismissed on January 7, 1977, as well. *Sibley v. United States*, 549 F.2d 808 (unpublished order of dismissal, 9th Cir., 1977). A new indictment charging Sibley with air piracy (49 U.S.C. 1472(i)) was returned on June 7, 1977. After delays which were in part caused by Sibley's health problems, Sibley went to trial again, and on February 3, 1978, the jury returned a verdict of guilty. On February 17, 1978, Sibley was sentenced to 30 years' imprisonment. Sibley filed his notice of appeal on February 17, 1978, and this appeal was taken. Jurisdiction of the district court was based on 18 U.S.C. § 3231. Jurisdiction of this court is proper under 28 U.S.C. § 1291. We find no reversible error and affirm his conviction.

## II. FACTS

On August 18, 1972, Sibley hijacked a United Airlines 727 at the Reno Airport. Prior to takeoff, while Sibley was in the cockpit, the cabin crew assisted all of the passengers off the plane. At Sibley's request, the plane was flown to Vancouver, British Columbia. The Canadians were unable to fulfill all of Sibley's requests and so the plane was flown to Seattle, Washington. An FBI agent posing as part of the United relief crew came aboard and shot Sibley.

Sibley was a former Navy and commercial pilot. His explanation for hijacking the plane was to protest the Viet Nam war. At trial, he acted as his own counsel, with the assistance of Mr. Vonasch.[1] Prior to trial,

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

1. Mr. James L. Vonasch was appointed by the district court as cocounsel/advisor to Sibley.

Sibley filed a notice of defense based on insanity.

## III. QUESTIONS PRESENTED

On appeal, Sibley presents many claims of error from the proceedings below. After reviewing these (including all filings made by Sibley acting as his own counsel), we conclude that all, except for one, of Sibley's claims are without merit.[2] The remaining question is whether the trial judge erred in failing to give a clarifying, amplifying instruction which defines wrongfulness under this court's test for insanity.

## IV. JURY INSTRUCTIONS ON INSANITY

Sibley claims that the failure to give a clarifying, amplifying instruction on wrongfulness, in addition to the other instructions on insanity, was reversible error. More specifically, he contends that the jury should have been instructed that wrongfulness means moral wrongfulness rather than criminal wrongfulness.

He represented Sibley throughout the trial and on this appeal. On January 20, 1979, Sibley discharged Mr. Vonasch for reasons we find too incredulous to repeat. We would like to compliment the attorneys involved in this case. The attorneys for the government, Ms. Christine McKenna, and Mr. J. Ronald Sim, and Mr. Vonasch for Sibley, all did an admirable job, in this court's view, of presenting their respective cases under trying and difficult circumstances. Mr. Vonasch, especially, in his efforts at trial, in briefing, and at oral argument, represented Sibley in the best and highest tradition of the legal profession. As demanded by Mr. Sibley, Mr. Vonasch is relieved of all further responsibility in this case.

2. In the various briefs prepared by Sibley himself, he has raised the following additional issues: (1) Was his conviction obtained through the use of perjured testimony? (2) Did the court lose jurisdiction of his case because there was no grand jury indictment before his first trial? (3) Whether the second trial violated the prohibition against double jeopardy? (4) Whether his right to speedy trial was violated? (5) Whether the trial judge should have disqualified himself? After examining these questions in depth, we conclude that these contentions are frivolous.

3. Sibley's other proposed instruction provided that:

At trial, Sibley offered two proposed instructions on this issue. Of these, he preferred to have the following one given:[3]

"Wrongfulness means moral wrongfulness rather than criminal wrongfulness. You are instructed that the defendant lacked substantial capacity to appreciate the wrongfulness of his conduct, even if he knows this act to be criminal, but commits it because of a false belief, the result of a mental disease or defect, that such act is morally justified."

Clerk's Record (C.R.) 332. The instructions given by the court provided, in part, as follows:

"A defendant is insane within the meaning of these instructions if, at the time of alleged criminal conduct, as a result of mental disease or defect he lacks substantial capacity either to appreciate the *moral* wrongfulness of his conduct or to conform his conduct to the requirements of law. (emphasis added)

C.R. 387; Reporter's Transcript (R.T.) 759.[4]

▉ In reviewing whether it was error for the trial judge to refuse Sibley's pro-

"Wrongfulness means moral wrongfulness rather than criminal wrongfulness. You are instructed that the defendant lacks substantial capacity to appreciate the wrongfulness of his conduct, even if he knows his act to be criminal, but commits it because of a delusion that it was morally justified.
C.R. at 333.

4. Since we must examine the instructions as a whole (as explained *infra* ), we include the complete text of the court's instructions on insanity:

"Under the defendant's plea of 'not guilty,' there is an issue as to his sanity at the time of the alleged offense. The law does not hold a person criminally accountable for his conduct while insane, since an insane person is not capable of forming the intent essential to the commission of a crime.

"The sanity of the defendant at the time of the commission of the alleged offense is an element of the crime charged and must be established by the Government beyond a reasonable doubt, just as it must establish every other element of the offense charged.

"A defendant is insane within the meaning of these instructions if, at the time of alleged criminal conduct, as a result of mental disease or defect he lacks substantial capacity either to appreciate the moral wrongfulness of his conduct or to conform his conduct to the requirements of law.

posed instruction, this court is guided by certain general principles. *See United States v. Lee*, 589 F.2d 980, 984–985 (9th Cir. 1979). The jury must be instructed as to the defense theory of the case; however, the exact language proposed by the defendant need not be followed. *United States v. Seymour*, 576 F.2d 1345, 1348 (9th Cir. 1978), *cert. denied*, —— U.S. ——, 99 S.Ct. 171, 58 L.Ed.2d 164; *United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir. 1977), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315. It is not error to refuse a proposed instruction as long as the other instructions in their entirety cover the defendant's theory of the case. *Seymour, supra*, 576 F.2d at 1348, *Kaplan, supra*, 554 F.2d at 968. When called upon to review the adequacy of jury instructions, this court examines the instructions as a whole, rather than merely viewing the failure to give any one instruction. *Seymour, supra*, 576 F.2d at 1348, *Kaplan, supra*, 554 F.2d at 968.

■ After examining the instructions as a whole, we are convinced that the failure to give Sibley's proposed instruction did not deprive him of the opportunity to base his defense on a lack of substantial capacity to appreciate the *moral* wrongfulness of his conduct. *See United States v. Lemon*, 550 F.2d 467, 470 (9th Cir. 1977). The proposed instruction did little more than repeat what the court actually said in the instructions.

And actually, it may have introduced a new element, the concept of criminal wrongfulness (as opposed to moral), to the jury, which could have led to confusion. In closing, defense counsel/advisor Vonasch was able to, and did fully and with clarity, argue that Sibley did not appreciate the moral wrongfulness of his actions. *See e. g.*, R.T. 774–775. The failure to give the instruction did not deprive Sibley of his opportunity to have the defense theory presented to the jury. Additionally, the jury had a copy of the court's instructions, including the statement that it was moral wrongfulness, for use during their deliberations. R.T. 807.

■ Our analysis does not end here, for Sibley argues that the prior cases of *United States v. Fresonke*, 549 F.2d 1253 (9th Cir. 1977), and *United States v. Segna*, 555 F.2d 226 (9th Cir. 1977), make it reversible error to refuse a clarifying, amplifying instruction on moral wrongfulness. We find those decisions distinguishable from the present case.

This court, sitting en banc, adopted the American Law Institute's Model Penal Code test for insanity in *Wade v. United States*, 426 F.2d 64, 70–71 (9th Cir. 1970) (en banc).[5] At that time we indicated a preference for use of the word "wrongfulness" rather than criminality under that test. *Wade, supra*, 426 F.2d at 71–72. The test was further

---

"For the purpose of throwing light upon the mental condition of the accused at the time of the alleged offense, the jury may consider evidence of his mental state both before and after that time. The material issue, however, is whether the defendant was sane or insane at the time of the alleged criminal conduct.

"In making your determination you are not bound to accept only the psychiatric testimony, or the testimony of any particular expert, which has been admitted on the defendant's mental condition. You may consider the testimony of lay witnesses and other evidence of the defendant's mental condition as well.

"The mere presence of a mental disease or defect, by itself, is not sufficient grounds for you to return a verdict of not guilty.

"Temporary insanity, as well as insanity of longer duration, is recognized by the law.

"If the evidence in the case leaves you with a reasonable doubt as to whether the defendant was sane at the time of the alleged offense, you will find him not guilty, even though it may

appear that he was sane at earlier and later times.

"In considering the mental state of the accused, the jury will always bear in mind that the law never imposes upon a defendant in a criminal case, the burden or duty of calling any witnesses or producing any evidence. C.R. 387–388, R.T. 758–760.

**5.** This test reads:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law."

*Wade, supra*, 426 F.2d at 71. The instruction given to the jury in the present case essentially followed this except that "moral wrongfulness" was used rather than criminality. C.R. 387, R.T. 759.

clarified in *United States v. McGraw*, 515 F.2d 758, 759–760 (9th Cir. 1975), where it was made clear that wrongfulness means moral wrongfulness rather than criminal wrongfulness.

Where the jury is exposed to diametrically opposing views on whether wrongfulness means criminal as opposed to moral, this court has held that it is the duty of the trial court to instruct the jury on the proper definition. *McGraw, supra*, 515 F.2d at 760; *United States v. Sullivan*, 544 F.2d 1052, 1056 (9th Cir. 1976). In the present case the jury was not confronted with diametrically opposing views as to whether wrongfulness meant criminal or moral.[6] Additionally, the instruction to the jury, while not explaining the concept of wrongfulness in great detail, did correctly state the law by explaining that it was moral wrongfulness under the test.

In *Fresonke, supra*, the trial court had refused to give an instruction explaining that wrongfulness meant moral wrongfulness on the basis that the defendant had not testified nor was there any evidence that the defendant had suffered from a delusion. 549 F.2d at 1255–1256. In reversing, this court said that there should have been an instruction that "for purposes of the insanity defense, wrongfulness means moral wrongfulness rather than criminal wrongfulness . . . ." 549 F.2d at 1256. This is distinguishable from the present case, since the instruction which was given here incorporated this by including the word "moral" in the standard *Wade* instruction. Additionally, the jury in the present case was not exposed to confusing, if not conflicting, concepts of wrongfulness as the jury was in *Fresonke*. Unlike the jury in *Fresonke*, the jury at Sibley's trial was not left to its own devices to determine whether it was criminal or moral wrongfulness which satisfied the insanity test.

The present case is also different from *Segna, supra*. In that case the district judge had refused an instruction on moral wrongfulness "because he felt that the term *moral* added nothing and would only confuse the jury." 555 F.2d at 232. As indicated previously, here the term *moral* was specifically included in the instruction to modify wrongfulness. By doing so, the trial judge alleviated the problem which concerned this court in *Segna*.

## V.  CONCLUSION

The contentions raised by Sibley in his pro se briefs are without merit. (*See* footnote 2, *supra*.)

Furthermore, we conclude that failure to give the clarifying, amplifying instruction on wrongfulness was not reversible error.[7] The jury was properly instructed on the law. The instructions, as a whole, adequately explained the insanity defense.

Therefore, for the reasons set forth in this opinion, Sibley's conviction is AFFIRMED.[8]

---

6. At one point in the government's closing argument there was a misstatement about wrongfulness. However, the trial judge promptly corrected any error. R.T. 764–766. Also, a copy of the instructions, with the correct statement of the law, were given to the jury.

7. This does not mean that the failure to give the requested instruction is never reversible error. We only hold that on the facts of this case, the failure to give the instruction was not reversible error.

8. Mr. Sibley's February 23, 1979, motion to provide him with a certified copy of a transcript of the oral presentation to this court on November 8, 1978, has been considered and is denied. Mr. Sibley's motion to vacate the oral argument and to reschedule it at some future date, filed March 15, 1979, is also denied.

All other pre- or post-argument motions filed by Mr. Sibley have been considered and are either denied or denied as moot.