**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alfred PONTICELLI, Defendant-Appellant.**

Civ. A. 77–3785.

United States Court of Appeals, Ninth Circuit.

Jan. 30, 1980.

Rehearing Denied July 21, 1980.

George L. Schraer, Berkeley, Cal., for defendant-appellant.

Dennis Schloss, Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN and HUG, Circuit Judges, and THOMPSON,* District Judge.

GORDON THOMPSON, Jr., District Judge:

A jury convicted Ponticelli of two counts of making a false declaration before a grand jury in violation of 18 U.S.C. § 1623 (1976), and the court sentenced him to a year and a day in custody on each count, the terms to run concurrently. We have jurisdiction over this appeal under 28 U.S.C. § 1291 (1976). Finding no reversible error, we affirm. The facts of the case will be discussed in relation to Ponticelli's objections on appeal.

## I.

Ponticelli's principal attack on his conviction is that the evidence is insufficient to support the jury's verdicts. The evidence and its inferences, of course, must be viewed in a light most favorable to the government as prevailing party. *See Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The two counts on which Ponticelli was convicted both involved Ponticelli's testimony in July, 1976, before a federal grand jury in-

vestigating the loansharking activities of one Werber. Among the questions posed to Ponticelli were inquiries concerning a handwritten list of four names, labeled Government's Exhibit No. 1 at trial. Agents of the Federal Bureau of Investigation (F.B.I.) found Exhibit No. 1 on Ponticelli's person on November 20, 1975, when they arrested him in connection with the loansharking operation.

The grand jury interrogator asked Ponticelli if Werber asked him to collect money from the people whose names appeared on Exhibit No. 1. The first count of the indictment alleged that Ponticelli falsely replied, "Not that I can recall. It's news to me," and "Not that I remember." When the interrogator questioned Ponticelli about where the paper came from, Ponticelli stated, "I have been of the opinion until now because I can't recollect where this piece of paper came from that it was planted by the F.B.I." This latter statement was the subject of the second count of the indictment.

As a result of the grand jury investigation, Werber was indicted in November, 1976. He pleaded guilty to obstruction of justice, racketeering, and extortion, and was sentenced.

A second federal grand jury decided in January, 1977, to investigate Ponticelli. Werber was called to testify, but he refused to answer questions. Werber was then granted immunity, and he testified that Ponticelli had told him shortly after Ponticelli's arrest in November, 1975, that he planned to say that he did not know where the list came from.

At trial, Werber testified that he met with Ponticelli and a third person, one LoCicero, on November 13, 1975, in a coffee shop. At the meeting, Werber stated, he gave Ponticelli a list of names on a piece of paper five by eight or nine inches. The people whose names were on this paper, he stated, owed Werber money, and he told Ponticelli at the meeting that Ponticelli

* The Honorable Gordon Thompson, Jr., United States District Judge, Southern District of California, sitting by designation.

could keep any money he collected from the people on the list.

Werber's testimony was corroborated by statements of F.B.I. agents. Two agents said at trial that they observed the meeting of Werber, Ponticelli, and LoCicero at the coffee shop on November 13, 1975. At the meeting, they saw Werber produce a piece of paper five by eight or nine inches. They could see writing in dark ink on the paper. The agents did not see Werber give the piece of paper to Ponticelli. One week later F.B.I. agents arrested Ponticelli. On Ponticelli's person was Exhibit No. 1, which is a piece of paper five by eight or nine inches. The list of names on Exhibit No. 1 was written in blue and black ink. Werber testified at trial that some but not all of the handwriting on Exhibit No. 1 was his. Ponticelli admitted before the grand jury that his handwriting also appeared on the paper.

Before the grand jury and at trial, Ponticelli offered no credible alternative explanation of how he came by Exhibit No. 1. Nor did he explain why he had any reason to believe that the F.B.I. planted the paper in his car. In fact, Ponticelli's actions belied any such belief. If, as Ponticelli suggested, he thought the F.B.I. planted the paper in his car, he would have destroyed it immediately. Instead, he carried it around with him until he was arrested.

Ponticelli argues that Werber's testimony is too contradictory for the jury to conclude Werber passed Exhibit No. 1 to Ponticelli at the cafeteria. While a reading of the transcript may suggest inconsistencies in Werber's testimony, the jury had an opportunity to hear Werber's inflections and witness his demeanor, and it had the right to credit some parts of his testimony and to discredit other parts based on these observations. The testimony of the F.B.I. agents and the incredibility of Ponticelli's own statements were sufficient corroboration of Werber's testimony, if such corroboration was necessary. *See United States v. Sisack,* 527 F.2d 917, 921 (9th Cir. 1975).

■ Even if Werber did give Exhibit No. 1 to Ponticelli, Ponticelli notes that he testi-fied to the grand jury only as to his memory and his opinions. Given the subjective nature of such statements, he argues, the jury could not conclude beyond a reasonable doubt that his testimony was knowingly false. *See* Brief for Appellant at 22–23. Juries can and do make inquiries every day into the actual state of mind of criminal defendants. For example, it is hornbook law that, in prosecuting a defendant for an attempt to commit a crime, the government must prove a specific intent to commit the crime that is the subject of the attempt. That the inquiry is subjective rather than objective does not preclude prosecution. Ponticelli's argument proves too much. If it were accepted, a grand jury witness could deceive a grand jury or frustrate its inquiry with impunity, simply by prefacing each sentence with the words "I believe."

Finally, Ponticelli suggests that reversal is compelled by *United States v. Clizer,* 464 F.2d 121 (9th Cir.), *cert. denied,* 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 673 (1972). In *Clizer,* a member of an organization of farmers suspected of illegally setting fires was convicted of perjury for telling a grand jury that (a) he did not have dynamite on a specific date, and (b) he did not recall a conversation in which he told a fellow member to get rid of an incriminating rifle casing. On the first statement, the court affirmed the conviction. On the second statement, the court found insufficient evidence that Clizer did remember the instruction he had allegedly given to his colleague.

> The only circumstantial evidence that even tends to show that the incident must have been remembered by Clizer is testimony given by Ronald Reeser, an acquaintance of Clizer, and an active participant in [the farmers' organization], who became a government informer shortly after the occurrence of the fires that were the subject of the grand jury investigation. His testimony represents too slender a reed upon which to rest the conviction on Count III.

*Id.* at 125. The court thus rejected the government's theory that a witness necessarily remembers a prior statement indicating consciousness of guilt.

As in *Clizer*, a witness for the government, Werber, testified to a statement by the defendant indicating consciousness of guilt.[1] But, Ponticelli, unlike Clizer, was not indicted for testifying that he could not recall the incriminating conversation with Werber. He was indicted for stating that he could not recall whether Werber asked him to collect money and for testifying that he could not remember how he received the list. The issue in this case, then, is not whether Ponticelli actually remembered having made the statement to Werber, but whether that statement, when coupled with the other evidence offered by the government, showed that Ponticelli lied to the grand jury about his knowledge of his relationship with Werber and of the source of the collection list. The jury here could find Ponticelli had a reason to remember where he got the list, because the list had monetary value to him; it contained the names of people owing Werber money from whom Ponticelli could collect. Moreover, unlike the testimony in *Clizer*, Ponticelli's statements to the grand jury were sufficiently incredible to warrant an inference he was lying.

■ Based on all these factors, the jury had sufficient evidence before it to conclude beyond a reasonable doubt that Ponticelli was guilty of the crimes for which he was tried.

## II.

■ Ponticelli contends there was insufficient evidence of the materiality of his allegedly perjurious statement, because the grand jury foreman testified that, prior to Ponticelli's appearance, the grand jury already knew enough to indict Werber for making usurious loans to the persons on the list. This argument misperceives the proper test of materiality in perjury cases.

[T]he government need not show that the false testimony actually impeded the grand jury investigation or that it related to the primary subject of the investigation. It is sufficient for the government to prove that the testimony was relevant to any issue under consideration by the grand jury. If the falsity of the testimony would have the natural tendency to influence the grand jury's investigation, it is material.

*United States v. Kelly*, 540 F.2d 990, 993 (9th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). The grand jury was investigating Werber's extortionate credit transactions. The questions on which Ponticelli perjured himself were relevant to these transactions, as well as to Ponticelli's and LoCicero's involvement. The trial court did not err in concluding that Ponticelli's statements, if false, were material.

## III.

■ The indictment alleged without elaboration that Ponticelli's perjurious statements were material. Citing dicta from *United States v. Slawik*, 548 F.2d 75 (3d Cir. 1977), Ponticelli argues the indictment failed to set forth the precise falsehood alleged and the factual basis of its falsity. Under the law of this circuit, "the materiality requirement of a perjury indictment may be met by a general statement that the matter was material." *United States v. Davis*, 548 F.2d 840, 845 (9th Cir. 1977).

## IV.

■ Ponticelli argues the case should be remanded for resentencing, because the district judge rejected without explanation the presentence report's recommendation of probation. The statute under which Ponticelli was convicted permitted the judge to impose a sentence of five years in prison and a $10,000 fine for each violation. The court only sentenced Ponticelli to a year and a day in custody. Except for a few

---

1. As noted above, Werber testified before the grand jury that Ponticelli had told him, after Ponticelli's arrest in November, 1975, that he, Ponticelli, would lie about knowing the source of the collection list. At trial, Werber testified that he did not remember the incriminating conversation. He was able to testify about that conversation only after refreshing his recollection with the transcripts of his grand jury testimony.

limited circumstances not applicable here,[2] "[t]he matter of sentencing is within the discretion of the trial court and is not reviewable by an appellate court so long as the sentence is within the bounds prescribed by statute." *United States v. Moreno,* 569 F.2d 1049, 1053 (9th Cir.) *cert. denied,* 435 U.S. 972, 98 S.Ct. 1615, 56 L.Ed.2d 64 (1978).

## V.

■ Ponticelli argues the trial court should have granted his post-trial motion to have Exhibit No. 1 examined for authenticity by a defense expert. During the trial, the defense hinted several times that it suspected the document was actually two pieces of paper. Defense counsel, however, never had it examined before or during trial, even though it was available for inspection. At the time the exhibit was admitted into evidence, defense counsel stated that to him it looked like one piece of paper. Under these circumstances, the district judge did not abuse his considerable discretion in denying the motion. *See United States v. Kelly,* 540 F.2d 990, 995 (9th Cir. 1976) (refusal to admit post-trial polygraphic evidence), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977).

## VI.

Werber was under a grant of immunity when he appeared before the grand jury that indicted Ponticelli, and Werber relied on this testimony to refresh his recollection at trial. Ponticelli's theory was that the grant of immunity made the grand jury testimony less credible. The trial court, however, refused to give the following instruction.

One who testifies under a grant of immunity with a promise from the government that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even though not corroborated or supported by other evidence.

Such testimony, however, should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether the testimony may be colored in such a way as to further the witness's own interest, for a witness who realizes that he may procure his own freedom by incriminating another has a motive to falsify. After such consideration, you may give the testimony of the immunized witness such weight as you feel it deserves.

1 Devitt & Blackmar's Federal Jury Practice & Instructions § 17.04 (3d ed. 1977).

■ While the trial court "must instruct the jury as to the defendant's theory of the case, the instructions given need not be in the precise language requested by the defendant." *United States v. Lee,* 589 F.2d 980, 985 (9th Cir. 1979), *quoting United States v. Kaplan,* 554 F.2d 958, 968 (9th Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). "When called upon to review the adequacy of jury instructions, this court examines the instructions as a whole, rather than merely viewing the failure to give any one instruction." *United States v. Sibley,* 595 F.2d 1162, 1165 (9th Cir. 1979).

■ Judge Lucas's instructions are not a basis for reversal here. The proposed instruction was at least misleading if not incorrect, since Werber was not under a grant of immunity at trial. It was also factually inapposite, for Werber had been prosecuted and convicted prior to his grand jury and trial appearances, and had received no special consideration from the

---

**2.** *See, e. g., United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1973) (sentence based on prior convictions obtained in violation of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); *Townsend v. Burke,* 334 U.S. 736, 71 S.Ct. 286, 95 L.Ed. 661 (1948) (sentence based on false evidence of prior convictions); *United States v. Capriola,* 537 F.2d 319, 320–21 (9th Cir. 1976)

(court must explain substantially disparate sentences among co-defendants where it appears some defendants are being penalized for exercising right to stand trial); *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1971) (sentence based on charges of very serious criminal conduct for which the factual basis is almost nil).

government for his testimony against Ponticelli. Viewed as a whole, the trial judge's instructions properly advised the jury of Ponticelli's theory of the case, since the instructions told the jury that, in assessing a witness's credibility, it could consider his status as a convicted felon and his motives.

## VII.

■ Ponticelli argues the trial court erroneously permitted the prosecution to read into the record portions of Ponticelli's grand jury testimony other than those specifically included in the indictment. Under Fed.R. Evid. 403, the trial court must balance the prejudicial effect of admission against its probative value. *See United States v. Sigal,* 572 F.2d 1320, 1323 (9th Cir. 1978). The testimony allegedly prejudiced Ponticelli by showing that Ponticelli felt the F.B.I. agents were liars and that Ponticelli believed the government was fabricating evidence against him. The grand jury testimony, however, also tended to show Ponticelli's state of mind. The trial court did not abuse its discretion in admitting the evidence.

## VIII.

■ Ponticelli assigns as error the exclusion of testimony by his former attorney, Anthony Brooklier, who had represented Ponticelli in an earlier federal criminal prosecution arising out of his November, 1975, arrest. The defense sought to ask Brooklier about statements about Werber's list that Ponticelli made to Brooklier during that earlier representation. The government objected to this evidence as hearsay; the defense countered that it was being offered only to show Ponticelli's state of mind, and not the truth of the matter asserted. According to the defense, Brooklier would testify that Ponticelli told him that Ponticelli could not remember where he got Exhibit No. 1.

The statement was hearsay, because it was an out-of-court declaration offered for the truth of its assertion. *See* Fed.R.Evid. 801(c). On appeal, Ponticelli argues that his statements were admissible under Fed.

R.Evid. 803(3). Even if Ponticelli has preserved this objection for purposes of appellate review, the trial court did not abuse its discretion in ruling the evidence inadmissible.

Under Rule 803(3), hearsay is admissible if it is a statement of "the declarant's then existing state of mind [or] emotion . . . (such as intent, plan, motive, design, [or] mental feeling . . .)." This rule is a specialized version of Fed.R.Evid. 803(1), which permits admission of present sense impressions. *See* Advisory Committee Notes to Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, 51 F.R.D. 315, 424 (1971). Rule 803(1), in turn, overlaps substantially with Fed.R.Evid. 803(2), governing excited utterances. *See id.* 422-23.

■ In making the foundational inquiry on admissibility under all three rules, the court must evaluate three factors: contemporaneousness, chance for reflection, and relevance. The state of mind declaration has probative value, because the declarant presumably knows what his thoughts and emotions are at the time of his declarations. The more time that elapses between the declaration and the period about which the declarant is commenting, the less reliable is his statement, because the greater chance there is that his memory is erroneous. The state of mind declaration also has probative value, because the declarant presumably has no chance for reflection and therefore for misrepresentation. *See id.; United States v. Partyka,* 561 F.2d 118, 125 (8th Cir. 1977), *cert. denied,* 434 U.S. 1037, 98 S.Ct. 773, 54 L.Ed.2d 785 (1978). The greater the circumstances for misrepresentation, the less reliable is the declaration. Finally, the state of mind declaration must be relevant to some issue in the case. *See Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892). Where state of mind itself is in issue, the court must determine if the declarant's state of mind at the time of the declaration is relevant to the declarant's state of mind at the time at issue. *See Seattle-First Nat'l Bank v. Randall,* 532 F.2d 1291, 1295 (9th Cir. 1976) (competence in issue).

In weighing these factors, the trial court did not abuse its discretion in concluding that Ponticelli had a chance for reflection and misrepresentation in making the proffered statements. Ponticelli's declarations came after his arrest; thus, he was aware that he was under investigation and that anything he said could be used against him. Since, in proffering this testimony, Ponticelli's trial attorney did not advise the court how much time elapsed between the arrest and the statements, the court was entitled to conclude that Ponticelli had sufficient time prior to the meeting with Brooklier to concoct an explanation for his possession of Exhibit No. 1. Finally, Ponticelli made the statement while consulting an attorney. This fact implies that Ponticelli was considering the legal significance of his declarations at the time he made them.

### IX.

Ponticelli argues his conviction should be reversed, because the grand jury interrogator "continually repeated and rephrased the same question to coax Mr. Ponticelli into the commission of perjury." Brief for Appellant at 40. Assuming there was abuse of the grand jury, this court need not reverse the convictions and dismiss the indictment. If a prosecutor attempts to establish the basis for possible multiple perjury counts by asking a witness the same question in different forms, the appropriate remedy is dismissal of all but one of the counts based on essentially the same responses. Accordingly, even if the two counts on which Ponticelli was convicted were based on responses to virtually identical questions, one of the two counts would be valid. Under the concurrent sentence doctrine, we need not determine whether dismissing either count would have been proper here. The concurrent sentence doctrine also obviates the need for the court to review Ponticelli's attacks on Count Two of the indictment as ambiguous and multiplicitous. Ponticelli's objection to Judge Lucas's ruling on the motion to suppress is too frivolous to warrant discussion.

AFFIRMED.