991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David L. TAYLOR, Defendant-Appellant.
 Nos. 92-1875, 92-1911.
 United States Court of Appeals, Sixth Circuit.
 March 29, 1993.
 
 Before GUY and BOGGS, Circuit Judges, and GIBSON, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, David Taylor, was convicted of willful failure to file income tax returns for the years 1985, 1986, and 1987, in violation of 26 U.S.C. § 7203.
 
 
 2
 On appeal, defendant raises five issues: (1) failure to grant his request for pauper status and appointed counsel;[1] (2) failure of the trial judge to recuse himself; (3) denial of the right to a jury trial; (4) improper exclusion of evidence; and (5) insufficiency of the evidence.
 
 
 3
 Although we address these issues seriatim, we are unpersuaded that any of them have merit and we affirm.
 
 I.
 
 4
 At all times relevant to these proceedings, Taylor was a self-employed chiropractor who had owned his own practice since 1979. For the years 1979, 1980, and 1981, defendant filed individual income tax returns. Beginning in 1982, however, defendant either filed no returns or filed returns on which he supplied no information and reported no income. In 1983 he began writing across the face of his returns the standard "tax protestor" language relating to his constitutional right not to furnish the requested information.
 
 
 5
 Defendant received written warnings from the Internal Revenue Service and was fined $500 for filing a frivolous return. During this same period of time, the defendant also failed to file State of Michigan income tax returns. Finally, defendant was indicted for failure to file his 1985, 1986, and 1987 returns. After a bench trial, Taylor was found guilty on all three counts.
 
 II.
 
 6
 We first address defendant's claim that he was denied pauper status and the right to appointed counsel. In order to put this and the other issues raised in proper perspective, it is important to note that Taylor was the classic tax protestor who advanced the usual tax protestor arguments that have been rejected time and time again by the courts. His defense can be summed up in one quote from his brief which captures his basic premise:
 
 
 7
 One who lawfully contracts his labor to engage in innocent and harmless activities in exchange for lawful compensation cannot be taxed for revenue purposes and is not subject to any revenue tax and therefore is not a "taxpayer" as defined by statute and is a non-taxpayer and is entitled to all the fruits of his labors, according to defendant[']s comprehension.
 
 
 8
 (Deft's.Supp.Br. at 9).
 
 
 9
 Defendant not only relied on the usual tax protestor arguments, he also adopted their trial strategy, which consists of refusing to admit the jurisdiction of the court and being generally uncooperative, including not responding to direct questions asked.
 
 
 10
 The explanation why defendant was not accorded pauper status or given appointed counsel is a simple one. Taylor simply refused to fill out the required forms or make the necessary showing to qualify. By no means would pauper status be assumed, since defendant over the years had enjoyed substantial income from his business and his wife also had income. It was defendant's choice and his right to stonewall if he chose, but he cannot now be heard to complain of the consequences.
 
 
 11
 We note additionally that Taylor was not handicapped by conducting his own defense. He had only one theory, which he was more familiar with than appointed counsel would have been. As is evidenced by defendant's pro se supplemental brief, he has studied his tax protestor handbook and learned its lessons well.
 
 III.
 
 12
 Prior to trial, defendant filed a motion asking that Judge Newblatt disqualify himself. The basis for the motion was that because the judge's salary was paid by the government, he was biased in favor of the government. To refer to this as a frivolous request, is to treat it with more kindness than it deserves. On appeal, defendant's appointed counsel has taken a different tack and argues that the judge should have recused himself sua sponte because of his involvement in two earlier civil suits involving defendant and his tax problems. Apart from the impropriety of arguing that which was not argued below, we find no merit to the argument. The law is clear that a judge's involvement in a previous case in which a party has been involved is not a ground for recusal. See Wheeler v. Southland Corp., 875 F.2d 1246, 1251 (6th Cir.1989).
 
 
 13
 We also note that defendant has referred to no incident in these proceedings which he claims demonstrated bias or prejudice on the part of the judge.
 
 IV.
 
 14
 Defendant claims that he should have been allowed to rescind his earlier written waiver of jury. We disagree. A defendant in a criminal case may waive his right to trial by jury if (1) the waiver is in writing; (2) the government attorney consents to the waiver; (3) the trial court approves the waiver; and (4) the defendant's waiver is voluntary, knowing, and intelligent. United States v. Martin, 704 F.2d 267, 271 (6th Cir.1983); Fed.R.Crim.P. 23(a).
 
 
 15
 All of the above conditions were met; nonetheless, defendant argues that when he signed the waiver of jury form he wrote the words "without prejudice" next to his name. We might be tempted to explore just what was intended by the defendant were it not for the fact that he has appended this phrase to every document he has signed in this case, including his notice of appeal. In context, it is clear that all that was intended was to voice again defendant's continued claim that the court has no jurisdiction over him whatsoever insofar as this income tax matter is concerned.
 
 
 16
 Additionally, it is not at all clear that Taylor ever seriously attempted to revoke his waiver of jury. Shortly before trial, Taylor filed with the court a document entitled: "Notice of Refusal to Submit to Treasonous United Nations Charter Jurisdiction Notice of Refusal to Submit to Star Chamber Proceedings Notice of Revocation of Signature." In that document, defendant claimed that the court was "operating under the secret jurisdiction of the United Nations and which jurisdiction is grounded in treason," and he stated that he "declines to voluntarily submit to such a treasonous jurisdiction...." The document then went on to state: "FURTHERMORE to remove all appearance of a waiver of jurisdictional challenge said Accused hereby revokes and cancels his signature on the 'Jury Waiver Form' as presented on the date of May 5/92, since said signature was obtained without the jurisdiction of the Court and without the advice of competent counsel."
 
 
 17
 When the trial judge was made aware of this document, he asked the defendant if it was his intent "to try and revoke the waiver of jury trial." Defendant refused to reply. Judge Newblatt then stated on the record: "The record will reflect that the defendant is looking straight at me but chooses not to answer." Here again it appears that what was intended was the continuing challenge by the defendant to the court's jurisdiction. At this point the trial judge had no option but to rule that if defendant's motion was an attempt at jury waiver revocation, it was denied. We find no error in the ruling of the trial judge.
 
 V.
 
 18
 In order for the government to convict a defendant for a violation of 28 U.S.C. § 7203, it is necessary that willfulness be proved. The Supreme Court has recently indicated that in the context of tax prosecutions, a good faith belief that one is not violating the law negates willfulness. Cheek v. United States, 498 U.S. ---, 111 S.Ct. 604, 610 (1991). Since the interpretation of the law that defendant urges (as do all the tax protestors in these cases) has been repeatedly rejected, the only way a defendant such as Taylor can gain an acquittal is to convince the trier of fact that he held a good faith belief that he was not violating the law.[2] In an attempt to head off this defense, the government filed a motion in limine to exclude third-party testimony as to defendant's state of mind. The government argued that such testimony would be inadmissible hearsay. The court granted the motion. Defendant now urges that this excluded testimony would fall within the exception to the hearsay rule dealing with a declarant's state of mind. Fed.R.Evid. 803(3). Upon review, we conclude that no error occurred for a number of reasons. To begin with, we reject the notion that Rule 803(3) would be applicable. Rule 803(3) reads:
 
 
 19
 (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.
 
 
 20
 As written, Rule 803(3) carefully excludes statements of belief and for good reason. The exceptions to the hearsay rule are premised on some set of circumstances providing the trustworthiness that would ordinarily be provided by testimony under oath at trial. Thus, if a declarant suddenly cries out expressing pain, we allow those who witnessed such an event to later testify to it on the supposition that the spontaneousness of the outcry provides it trustworthiness. In contrast, if a taxpayer goes around telling his friends he has researched the law or read a book and now believes that wages are not income and he and all the rest of the world's wage earners are exempt from paying income taxes, the guaranty of trustworthiness anticipated by Rule 803(3) is completely lacking.
 
 
 21
 We also note in this regard that, if a defendant's out-of-court statements as to beliefs were made in an effort to build a defense, such statements are not admissible. United States v. Ponticelli, 622 F.2d 985, 992 (9th Cir.), cert. denied, 449 U.S. 1016 (1980).
 
 
 22
 Additionally, defendant failed to make an offer of proof as is required by Fed.R.Evid. 103(a)(2), and thus we have no way of knowing whether the excluded testimony even existed.
 
 
 23
 Finally, this issue loses most of its significance because this was not a jury trial. The defendant was permitted to argue at length his good faith belief in his interpretation of the tax laws, and the trial judge was well aware of the law on this issue. It is extremely doubtful that other persons coming in and saying they heard the defendant say what he is now telling the court would have changed the outcome of this trial. This is particularly true in light of the overwhelming evidence presented as to willfulness which we now proceed to discuss.
 
 VI.
 
 24
 Defendant's last claim of error is that the evidence was insufficient to establish the necessary element of willfulness. We find the contention to be devoid of merit. Willfulness is defined as a "voluntary, intentional violation of a known legal duty." Cheek, 498 U.S. at ----, 111 S.Ct. at 610. To prove willfulness "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Id.
 
 
 25
 It is not open to question that there is a legal duty to file tax returns. It is equally clear that defendant knew of this duty because he not only filed proper income tax returns for a number of years, but even for the years in which he did not file, he had his accountant prepare the tax returns. Further, the accountant instructed Taylor to file the completed returns with the IRS. The defendant was also notified in writing by the government that he was required to file returns. Although the completed returns were never filed, defendant did use them as part of the documentation as to income submitted to secure loans from a bank. Also, for at least one year, 1983, the defendant filed a return but did not provide any information on the return.
 
 
 26
 The only defense that Taylor had, as we indicated earlier, was to convince the trier of fact that the government did not prove that he voluntarily and intentionally violated his duty to file a proper tax return. This is, in large measure, a credibility determination. In discussing this issue in Cheek, the Supreme Court noted:
 
 
 27
 In this case, if Cheek asserted that he truly believed that the Internal Revenue Code did not purport to treat wages as income, and the jury believed him, the Government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief. Of course, in deciding whether to credit Cheek's good-faith belief claim, the jury would be free to consider any admissible evidence from any source showing that Cheek was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations, of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income.
 
 
 28
 498 U.S. at ----, 111 S.Ct. at 611 (footnote omitted).
 
 
 29
 There was ample evidence before Judge Newblatt from which he could conclude that one who knew the litany of the tax protestor arguments so well, must also be aware of the fate that had befallen those arguments when tested in court. Taylor proceeded not from a misunderstanding of the law but from a disagreement with it. This does not constitute a defense.
 
 
 30
 AFFIRMED.
 
 
 31
 Boggs, Circuit Judge, concurring.
 
 
 32
 I agree with all of the court's opinion except its analysis of Rule 803(3) of the Federal Rules of Evidence. I believe that defendant's failure to make a specific proffer of the information it wished to present is fatal to his claim on appeal, and thus I have no difficulty concurring in the result reached. However, I disagree with the court's additional reason for rejecting the challenge to the motion in limine, based on the complete inapplicability of Rule 803(e).
 
 
 33
 That rule clearly states that a witness can testify to what the declarant said, out-of-court, about his "then existing state of mind ... but not including a statement of memory or belief to prove the fact rememebered or believed...." It seems to me quite possible that Taylor could have a witness who would testify that the witness heard Taylor say, contemporaneous with his failure to file tax returns, that he was very happy because he was now convinced that the tax law was such that he did not have to file, or wages were not income, or some other "factoid" in the tax protestor litany. If that were the case, I believe that such a statement would fall squarely within Rule 803(3), which could make it admissible. It would only fall afoul of the exception within the rule if the statement were proferred to prove that Taylor in fact did not have to file, or that wages in fact were not income.
 
 
 34
 Of course, such a window for the admission of such testimony would be quite narrow, and subject to exclusion under the doctrine of United States v. Ponticelli, 622 F.2d 985, 992 (9th Cir.), cert. denied, 449 U.S. 1016 (1980), if surrounding circumstances undermined the trustworthiness of the testimony. The very uncertainty of all of the facts surrounding the proposed testimony simply reemphasizes why the absence of a specific proffer is fatal to defendant's appeal on this issue.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 Defendant raised the issue in his pro se supplemental brief. It was not raised by appointed counsel in his original brief
 
 
 [2]
 Tax protestor cases are frequently "scripted" by the government and defendants against the backdrop of the latest binding legal precedent. The decision in Cheeks came out just a few months before trial in this case