UNITED STATES

v.

David BIANCHINI.

Cr. No. 90–18–01.

United States District Court,
D. Vermont.

March 18, 1991.

Thomas Anderson, Asst. U.S. Atty., Burlington, Vt., for plaintiff.

Norman Zalkind, Boston, Mass., and Paul Volk, Blodgett, Watts & Volk, Burlington, Vt., for respondent.

## OPINION AND ORDER

BILLINGS, Chief Judge.

### I. Introduction

Before the court are defendant's motions (1) for a new trial; (2) for disclosure, to interview jurors, and for a hearing on extraneous influences on the jury verdict; and (3) for judgment of acquittal. The government has opposed all of the motions. For the reasons herein stated, defendant's motions are DENIED.

### II. Background

A. The Jury Tampering Incident

Defendant David Bianchini was convicted of violating various federal drug laws after a jury trial lasting from November 13–26, 1990. During the trial, certain unusual and troubling events occurred that form the primary basis for defendant's motions.

On Monday, November 18th, prior to the convening of court, Juror No. 1 informed the court that he had been telephoned the preceding day by a person offering him $5000 to see to it that there was a hung jury in the case. The juror, Arthur Tenner, approached the court at approximately 8:45 a.m. with this information. Mr. Tenner had not yet seen any of the other jurors that morning.

The court instructed Mr. Tenner that it would continue with the trial and that he was not to discuss the incident with anyone, particularly with any members of the jury. The court then notified the Federal Bureau of Investigation which in turn notified the Acting United States Attorney.

During the lunch recess that day, the court spoke to Mr. Tenner further and instructed him again that he was not to discuss the incident or the case with anyone. So that other jurors would not notice anything was amiss, the court had the deputy

clerk escort juror Tenner into chambers through a back entrance after the other jurors had gone to lunch.

The court conducted full trial days on November 18th and 19th, with juror Tenner continuing to sit pursuant to his instructions. The court recessed for the Thanksgiving holiday at noon on Wednesday, November 20th. The parties were not informed of the events that had transpired during these two and a half days of trial.

After recessing, the court conducted an *in camera* hearing without counsel. In the first part of that hearing, Acting United States Attorney Charles Caruso was present. The court stated for the record the events that had transpired. U.S. Attorney Caruso stated that he had been informed by the F.B.I. of the attempted jury tampering. He presented the court with some cases that he suggested would allow the court to continue with the trial while at the same time giving the government an opportunity to investigate potential jury tampering in violation of 18 U.S.C. §§ 401 and 1503. He informed the court that he had not told the Assistant U.S. Attorney handling the case about the events that had transpired so that trial counsel for both the defendant and the government would be in the same posture. The court then excused U.S. Attorney Caruso.

In the second part of the hearing, the court had the deputy clerk escort juror Tenner into chambers, again through a back entrance. The court instructed juror Tenner to state for the record what had occurred. After he did so, the court asked Mr. Tenner whether he had followed the court's instructions not to discuss the case with anyone during the preceding two and a half days. Mr. Tenner stated that he had discussed the events with no one other than his mother with whom he lived. The court asked Mr. Tenner whether he thought that he could remain an impartial juror after what had happened and Mr. Tenner said that he did not think that he could.

Based upon Mr. Tenner's statements, the court found that a bribery attempt of the juror had been made; that Mr. Tenner had followed the court's instructions not to dis-

cuss the incident with anyone (except his mother); and that he could not continue to sit as an impartial juror. The court then dismissed Mr. Tenner as a juror and indicated that it would seat an alternate juror the following Monday. The court noted during the hearing that it had followed procedures and exercised discretion in reliance on *United States v. Aiello*, 771 F.2d 621 (2d Cir.1985), *United States v. Moten*, 564 F.2d 620 (2d Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 489, 54 L.Ed.2d 318 (1977), *United States v. Floyd*, 496 F.2d 982 (2d Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974), and *United States v. Miller*, 381 F.2d 529 (2d Cir. 1967), *cert. denied*, 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968).

During the weekend of November 24th–25th, Mr. Tenner received a note threatening his life that was implicitly connected to his having informed the court of the bribery attempt.

On Monday morning, November 26th, the court in chambers informed counsel of the events of the preceding week and that it intended to *voir dire* the remaining jurors. Then, in open court, the court inquired of the remaining jurors whether anyone had had discussions with juror Tenner or any other person about the case. Two jurors stated that they had had conversations with Mr. Tenner.

The two jurors were questioned individually in chambers with counsel present. They both stated that Mr. Tenner had made disparaging remarks to them about the insanity defense being put forward by defendant but that they had terminated the conversations immediately. The court inquired of the jurors whether they felt that they could continue to sit impartially and they both stated that they thought that they could. The court found that the two jurors were qualified to remain on the jury.

B. The Insanity Charge

With respect to his insanity defense, defendant sought a jury instruction that under 18 U.S.C. §§ 4243 and 4247(d), a defendant who is found not guilty by reason of insanity is committed for observation and is

given a hearing regarding continued commitment. Defendant based his argument on *United States v. Neavill*, 868 F.2d 1000, 1002–05 (8th Cir.1989), *reh'g granted*, 877 F.2d 1394 (8th Cir.1989), a case in which the court concluded that Congress intended to allow such an instruction. Based upon the absence of such a requirement in the Second Circuit, as well as upon the rule that punishment is not the concern of the jury, this court declined to give such an instruction.

Further, the court included in its legal insanity instruction the following:

[I]f you find that the defendant, because of a mental disease or defect, lacked substantial capacity to appreciate the moral wrongfulness of this conduct even if he knows his conduct to be criminal, but so commits it because of a delusion that he was morally justified, then your verdict must be not guilty. By a delusion, I mean a misperception engendered by mental disease or defect.

Defendant argues that the use of the word "delusion" was error because of language in *United States v. Sullivan*, 544 F.2d 1052, 1055 (9th Cir.1976), *cert. denied*, 442 U.S. 933, 99 S.Ct. 2867, 61 L.Ed.2d 302 (1979), suggesting that use of that word might attribute a restrictive, psychiatric meaning to legal insanity.

## III. Discussion

### A. Motion for New Trial Based Upon Jury Tampering Incident

Incidents of jury tampering present the court with several competing interests. The defendant's interest is based upon his Sixth Amendment right to an impartial jury, while the government's interest is based upon its concern for an impartial jury as well as its responsibility to investigate possible jury tampering. *See United States v. Moten*, 582 F.2d 654, 660–61 (2d Cir.1978). In addition, both sides have an interest in replacing the tainted juror so that the trial may proceed without a mistrial. *See id.* at 661.

The initial burden of reconciling these competing interests rests upon the trial judge. *Id.* The question before us is whether our reconciliation deprived defendant of a fair trial such that he is entitled to a new one.

We begin our analysis with *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954) (*Remmer I*), in which the Supreme Court stated:

In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer I* involved allegations that an attempt had been made to bribe a juror. The trial judge in that case informed the F.B.I. and prosecuting attorneys about the attempted bribe but did not inform the defendant. *See id.* at 228, 74 S.Ct. at 450. The judge allowed the juror to deliberate with the jury and never conducted any kind of inquiry to determine whether the juror remained fair and impartial or whether the jury had been affected. *See id.* The Supreme Court stated that

[t]he trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id.* at 229–30, 74 S.Ct. at 451.

On remand, the district court conducted a hearing and concluded that the event had been harmless. *See United States v. Remmer*, 122 F.Supp. 673 (D.Nev.1954), *cert. granted*, 350 U.S. 820, 76 S.Ct. 63, 100 L.Ed. 733 (1955). When the case reached the Supreme Court again, the Court ordered a new trial, stating that the hearing

below had been too narrow in scope. *See Remmer v. United States*, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956) (*Remmer II*).

Though we analyze our handling of this incident in terms of *Remmer*, it is not dispositive of the case. The trial court in *Remmer* allowed the tainted juror to remain on the jury without ascertaining his impartiality. *See Remmer I*, 347 U.S. at 228, 74 S.Ct. at 450. In contrast, this court determined that Mr. Tenner was no longer impartial and dismissed him. The court in *Remmer* never ascertained that the other jurors had not been affected, *see id.;* this court conducted a general *voir dire* of the entire jury and more specific questioning of two jurors who suggested that there might have been improprieties. The *Remmer* trial court decided *ex parte* how it would handle the incident, *see id.* at 229–30, 74 S.Ct. at 451, in our case, defense counsel had the opportunity to offer defendant's position when they were told of the incident and when the *voir dire* of the other jurors was conducted. Thus, we look to *Remmer* as the guidepost for this case, but consider it in conjunction with its progeny.

In *Miller v. United States*, 403 F.2d 77, 84 n. 11 (2d Cir.1968), *dismissing appeal from* 284 F.Supp. 220 (D.Conn.1968), the Second Circuit set out the principle that

> [w]here, as here, the incident was explored before submission to the jury, the trial judge's initial appraisal of the ability of the jurors to render a fair verdict in light of the objective facts should stand unless it is manifestly unreasonable, as the Court thought in *Remmer*, or significant new objective facts are developed.

The court in *United States v. Aiello*, 771 F.2d 621 (2d Cir.1985) emphasized the discretion that must be given to the trial judge in this area:

> Upon learning of an unauthorized communication by a third person with a juror about a case pending before the juror, the judge must investigate the matter to determine whether the juror's ability to perform her duty impartially has been adversely affected. The extent of that investigation and the method of conduct-

ing it will, of course, depend on the surrounding circumstances, including the content of the communication and the apparent sensitivity of the juror. The trial judge must be given wide discretion to decide upon the appropriate course to take, in view of his personal observations of the jurors and the parties.

*Id.* at 629.

*Aiello* upheld a district judge's handling of a jury tampering incident in which the district judge allowed two tainted jurors (one the victim of a bribery attempt and one her confidante) to remain on the jury. *See id.* at 626. The district court's procedures included speaking to the two jurors off the record and without the knowledge of counsel and then questioning the entire jury on the record. *See id.*

In denying the defendants' motion for a new trial, the appellate court reiterated the Supreme Court's position that the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *See id.* at 629 (quoting *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (*per curiam*)). The court stated that "[i]n the circumstances of this case we cannot say that ... [the trial court's] procedures were inadequate to ensure that defendants were not deprived of their right to a fair trial." *Id.* at 630.

These cases indicate that the Second Circuit has given trial judges discretion in satisfying the requirements of *Remmer*. *See also United States v. Miller*, 381 F.2d 529, 539 (2d Cir.1967), *cert. denied*, 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968) (referring to "wide discretion" accorded trial judge in jury tampering incident). Nevertheless, defendant claims that removal of the tainted juror does not dispel the presumption of prejudice because the juror may have attempted before his removal to influence other jurors and other jurors might have surmised that defense misconduct prompted the removal of the tainted juror. *See United States v. Shapiro*, 669 F.2d 593, 599–600 (9th Cir.1982).

█ These arguments are not of overwhelming concern in this case for several

reasons. First, Mr. Tenner informed the court of the bribery attempt when he first came into court on Monday morning. Thus, the court was able to instruct him not to discuss the bribery attempt with any of the other jurors before he had even seen them. Second, Mr. Tenner stated at the *in camera* hearing on Wednesday afternoon that he had not discussed the incident with any of the other jurors and the *voir dire* of the other jurors supports the truth of his statement. Although Mr. Tenner may have inappropriately broached the merits of the case with two of the jurors, there was no evidence that those brief comments in any way were connected to the bribery attempt. Also, there is significantly less concern about what Mr. Tenner might have said to other jurors than was the case in *Shapiro* where it was the juror himself who had made the bribery attempt. *See id.* at 599.

Lastly, the court took precautions in its meetings with Mr. Tenner so that other jurors would not see him entering chambers and become suspicious. The fact that he was removed without explanation may have led some jurors to suspect defense misconduct, but any such suspicion is to be expected as a natural incident of the removal itself and was not suggested by any of the events that occurred. Since it is the prerogative of the court to substitute an alternate juror for cause without the consent of counsel, *United States v. Moten,* 564 F.2d 620, 629 (2d Cir.), *cert. denied,* 434 U.S. 959; 98 S.Ct. 489, 54 L.Ed.2d 318 (1977), a new trial is certainly not required whenever the court exercises that prerogative.

This court thus concludes that its handling of the jury tampering incident comported with the requirements of *Remmer* and its progeny. Mr. Tenner was questioned without counsel present to avoid the potentially chilling effect that inquiry before counsel may have had. *See Aiello,* 771 F.2d at 630. Once the court ascertained the serious nature of the incident and the course of action it intended to take, the incident was placed on the record. *See id.* at 629-30 (noting that court erred in not placing initial discussions with tainted ju-

rors on record but that error was harmless in light of later actions). Though Mr. Tenner remained on the jury for two and a half days after the incident occurred, he was under instructions during the entire time not to discuss the matter with anyone. *See United States v. Miller,* 381 F.2d 529, 539 (2d Cir.1967), *cert. denied,* 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968) (affirming conviction where trial judge delayed determining whether tainted jurors could remain impartial until the taking of evidence had ended).

Further, the court acted within its prerogative in substituting an alternate for Mr. Tenner after finding that he could no longer remain impartial. *See Moten,* 564 F.2d at 629. The court informed counsel of the incident at a point that enabled the F.B.I. to conduct its investigation but did not compromise the defendant's right to an impartial jury. *See Moten,* 582 F.2d at 660–61 (outlining competing interests that trial judge must reconcile in incidents of jury tampering). Counsel had an opportunity to be heard before the court questioned the jury.

With counsel present, the court then conducted a *voir dire* of the jury to ascertain whether any of the other jurors had been affected. The court conducted the inquiry in terms general enough to avoid raising suspicion. *See id.* at 661 (noting that jurors questioned too deeply about jury tampering incident may become so prejudiced that accused cannot obtain fair trial). When two jurors indicated that they may have had inappropriate contact with Mr. Tenner, the court questioned them individually with counsel present. *See Aiello,* 771 F.2d at 626. Based upon the jurors' answers, the court concluded that the conversations were unrelated to the bribery attempt and that the jurors could remain impartial. *See id.* (stating that court must be given wide discretion to determine whether juror's ability to perform duty impartially has been adversely affected). Based upon the content and limited nature of Mr. Tenner's statements to the two jurors, the court concluded that further inquiry was unnecessary. *Cf, Remmer II,*

350 U.S. at 379–80, 76 S.Ct. at 426–27 (stating that "paucity of information" about jury tampering incident made manifest the need for full hearing).

Under these circumstances, we hold that the procedures followed dispelled the presumptive prejudice to defendant that this type of incident creates. *See Remmer I,* 347 U.S. at 229, 74 S.Ct. at 451. We conclude that our handling of the incident was not "manifestly unreasonable" and that defendant has not shown "significant new objective facts" that "strongly tend to prove that the ... [misconduct] tainted one or more of the other jurors." *Moten,* 582 F.2d at 660 (quoting *Miller,* 403 F.2d at 84 n. 11). A new trial is therefore unwarranted.

**B. Motion for New Trial Based Upon Allegedly Erroneous Jury Instructions**

■ Defendant further argues that he is entitled to a new trial because of what he asserts were errors in the jury instructions given by the court. First, defendant argues that he was entitled to an instruction about the consequences of a verdict of not guilty by reason of insanity under 18 U.S.C. §§ 4243 and 4247(d)—specifically, that defendant would be committed for observation and given a hearing regarding continued commitment. The Eighth Circuit in *United States v. Neavill,* 868 F.2d 1000, 1002–05 (8th Cir.1989), *reh'g granted,* 877 F.2d 1394 (8th Cir.1989), concluded that Congress intended to allow such an instruction and defendant argues that *Neavill* should have been followed in this case.

As for this portion of the jury charge, the court followed the general rule that it is inappropriate to instruct jurors on the punishment that the defendant might receive. *See United States v. Glick,* 463 F.2d 491, 494 (2d Cir.1972) (citing 2 Wright, Federal Practice and Procedure, Criminal § 512, at 366–67 (1969)). This court has discovered no case in which the Second Circuit required the instruction requested by defendant, nor do the statutes involved require such an instruction. The court was thus not in error when it denied defendant's request.

■ Next, defendant argues that the court's instruction requiring the jury to find that defendant failed to appreciate the wrongfulness of his acts "because of a delusion" was further error requiring a new trial. The court derived its instruction from *United States v. Freeman,* 357 F.2d 606, 622 (2d Cir.1966) (citing *People v. Schmidt,* 216 N.Y. 324, 110 N.E. 945 (1916) (Cardozo, J.)), the case in which the Second Circuit adopted the wrongfulness standard as the test for legal insanity. Defendant points to a discussion by the Ninth Circuit wherein the court expressed concern that the term "delusion" might wrongly attribute a restrictive, psychiatric meaning to legal insanity. *See United States v. Sullivan,* 544 F.2d 1052, 1055–56 (9th Cir.1976), *cert. denied,* 442 U.S. 933, 99 S.Ct. 2867, 61 L.Ed.2d 302 (1979). Addressing this concern, the court "seized this opportunity to disclaim any talismanic focus on the word 'delusion.' The word adds no additional element to those which must be established before an individual is entitled to any instruction on legal insanity; it is a word of clarification, not of limitation." *See id.* at 1055. Defendant argues that we ignored the concerns raised in *Sullivan* by including the word "delusion" in our charge. *See id.* at 1055–56.

Defendant's argument fails. Not only does *Freeman* remain the law in this circuit, but this court's charge addressed the very concerns expressed in *Sullivan.* Rather than leaving the jurors to interpret "delusion" on their own, we defined the term as "a misperception engendered by mental disease or defect." This language, taken directly from *Sullivan,* 544 F.2d at 1055 n. 1, took away any risk of a "talismanic focus" on the word and insured that the jury would not import a limited psychiatric meaning to legal insanity.

**C. Motion for Discovery and a Hearing Regarding Possible Further Jury Contamination**

Defendant also moves (1) that any information uncovered by the F.B.I. regarding communications between the contacted juror and others be disclosed to him; (2) for

permission to interview jurors; and (3) that the court conduct a hearing about the bribery attempt.

■ Defendant's right to an impartial jury means that when reasonable grounds exist to believe that the jury may have been exposed to extraneous influences, "the entire picture should be explored." *See Moten*, 582 F.2d at 664 (quoting *Remmer II*, 350 U.S. at 379, 76 S.Ct. at 426). Often, discovery may be the only way to see the entire picture. *See id.* However, balanced against defendant's right to an impartial jury are interests of avoiding post-verdict harassment of jurors, preserving the finality of judgments, discouraging meritless applications for post-verdict hearings, and reducing the likelihood of and temptation for jury tampering. *See Sullivan v. Fogg*, 613 F.2d 465, 467 (2d Cir. 1980).

■ Courts that have weighed these concerns and ordered further inquiry have been presented with circumstances unlike those present in this case. *See Remmer II*, 350 U.S. at 379–80, 76 S.Ct. at 426–27, *United States v. Forrest*, 620 F.2d 446, 457–58 (5th Cir.1980), *Moten*, 582 F.2d at 666–67. *Remmer II*, 350 U.S. at 379–80, 76 S.Ct. at 426–27, indicated that the trial court should have conducted a full hearing because of "the paucity of information relating to the entire situation coupled with the presumption which attaches to the kind of facts alleged...." That paucity of information resulted from the lack of any interview with the tainted juror and a record that did not show "what actually transpired." *See Miller*, 381 F.2d at 539–40. In contrast, this court interviewed Mr. Tenner and developed a full record of the incident and any effect upon the other jurors.

*Moten*, 582 F.2d at 660, cited by the defendant as requiring this court to conduct further inquiry, remanded for further investigation because "[m]any questions remain[ed] unanswered." Unlike this case, *Moten* involved a bribery attempt made by one of the jurors. The case was remanded because there was evidence suggesting that another juror may have been involved

in the attempt. *See id.* at 659. The defendant's sister (who was the person approached) indicated that there may have been another juror with the juror who initiated contact with her. In addition, an affidavit from the foreperson of the jury suggested that the guilty juror developed a friendship with another juror during the trial. *See id.* Under these circumstances, the trial court's limited *voir dire* could not have been expected to discover that a juror had committed a crime. It is in this context that the Second Circuit's statement that further inquiry be done "not merely to the government's satisfaction, or to the satisfaction of the district judge, but also to the satisfaction of the defendant" must be viewed. *Id.* at 660.

Unlike these circumstances, the case at bar left no unresolved questions. None of the jurors indicated that they had been approached with a bribe nor discussed the bribery attempt with Mr. Tenner. The two jurors questioned in chambers indicated that inappropriate comments were made by Mr. Tenner, but the conversations had nothing to do with the bribery attempt. There simply is not a shred of evidence that the attempt went beyond Mr. Tenner.

This court has carefully weighed the arguments for conducting further investigation in this case. Based upon our review of the events that transpired during this trial, we conclude that this is a case where to conduct further inquiry would be a waste of time and an inconvenience to the jurors. *Id.*

### D. Motion for Judgment of Acquittal

■ Defendant moves for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) as to all counts of the indictment. Defendant argues that no rational juror could have concluded that he was sane at the time of the offense.

Viewed in the light most favorable to the government, *see United States v. Benitez*, 920 F.2d 1080, 1088–89 (2d Cir.1990), the evidence established that the defendant committed the offenses charged, appreciated the moral wrongfulness of his conduct,

and did not suffer from a severe mental disease or defect.

*IV. Conclusion*

Based on the foregoing, defendant's motions (1) for a new trial; (2) for disclosure, to interview jurors, and for a hearing on extraneous influences on the jury verdict; and (3) for judgment of acquittal are DENIED.

SO ORDERED.